In the Matter of the Estate and Guardianship of LOUISE E. WYMAN, an Incompetent Person.

A. D. BRYAN, Guardian and Appellant, WESTERN SURETY COMPANY, Bonding Company and Appellant, v. WILLIAM S. BRYAN, MONTANA BANK, Contestant and Respondent.

No. 11131.
Submitted May 11, 1967. Decided June 28, 1967.
429 P.2d 629.

526

Smith & Emmons, Great Falls, Small and Cummins, Helena, Jardine, Stephenson, Blewett & Weaver, Great Falls, Jack Lewis (argued), Great Falls, Floyd O. Small (argued), Helena, Larry O. Foss (appeared), Townsend, for appellants.

Wuerthner and Wuerthner, John P. Wuerthner (argued), Great Falls, for respondent.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from a judgment entered against the ex-guardian of Louise E. Wyman for funds misappropriated from the guardianship estate. The Western Surety Company joins in this appeal as surety to appellant A. D. Bryan, the ex-guardian, after having entered the case as an intervening party. The judgment runs against both the ex-guardian and the Surety Company.

Louise E. Wyman was 86 years of age and lived alone in Great Falls, Montana. Her only living relatives and sole heirs-at-law were two nephews, William S. Bryan of Seattle, Washington, and Archie D. Bryan, a retired railroad worker living in Townsend, Montana. In May of 1964 Louise Wyman asked A. D. Bryan to move to Great Falls to take care of her, because she was becoming too old and infirm to manage her own affairs. A. D. Bryan was to receive $100 per month plus additional amounts for living expenses; this arrangement was rather informal and was not contained in any written agreement.

A. D. Bryan commenced living with his aunt about May 31, 1964. By October of 1964, Louise Wyman was no longer able to manage her financial assets, which were substantial, and granted a power of attorney to A. D. Bryan authorizing him to draw funds from various bank accounts and giving him access to safe deposit boxes, etc. On December 17, 1964, A. D. Bryan applied to the district court to be appointed legal guardian of his aunt. Louise Wyman was adjudged an incompetent person and the petition of guardianship was granted on December 23, 1964. A surety bond was obtained by A. D. Bryan from appellant Western Surety Company.

This lawsuit is concerned with alleged misappropriations from the estate of Louise Wyman committed by A. D. Bryan from the time he was granted a power of attorney through proceedings removing him as guardian. The removal proceeding was brought by William S. Bryan on April 28, 1965. A. D.

Bryan made a complete accounting of the guardianship estate pursuant to such proceedings and testified at the hearing. As a result of this hearing, the district judge permitted A. D. Bryan to withdraw as guardian, but stated that there was also legal cause for his removal. A. D. Bryan then left the State of Montana to protect his "health."

The district court found that A. D. Bryan had misappropriated $2,674.17 in cash from the estate as well as a Hamilton Fund Certificate which he cashed for $11,150.57. A judgment in the total amount of $13,824.74 was entered against A. D. Bryan. In addition, certain attorney fees were allowed, the source of such fees being unspecified.

The issues in this appeal concern the liability of A. D. Bryan, of Western Surety Company, and in an oblique manner the source of attorney fees, and shall be discussed in that order.

A. D. Bryan contends that the evidence is insufficient to support the charges and judgment against him. We disagree. As to the $2,674.17 in cash, the record clearly shows that A. D. Bryan withdrew substantial amounts of cash immediately upon being given the power of attorney. His testimony at the removal proceeding concerning the disposition of such withdrawals is so vague and evasive as to tax the imagination of even the most credulous listener. Several checks in amounts of $500 and $1,000 were drawn by A. D. Bryan and there is virtually nothing in the record, accounting for the proper expenditure of such funds. Appellant Bryan admitted to carrying large amounts of cash on his person to meet "emergency" situations, etc. With respect to cash withdrawals, the district court was quite liberal in allowing a judgment for $2,674.17 since more than twice that amount was withdrawn by Bryan during the few weeks he held the power of attorney.

Louise Wyman owned several Hamilton Fund Certificates. The one in question had been endorsed in blank by Louise Wyman shortly after it was purchased by her in 1961. At the guardianship hearing prior to his appointment, A. D.

Bryan submitted a list of the estate's assets which included the Hamilton Fund certificate. Yet according to Bryan's uncorroborated testimony, his aunt had made a gift of the certificate to him prior to his appointment as her guardian. The certificate had been in a safe deposit box to which Bryan gained access under the power of attorney. Under these circumstances, Bryan had a substantial burden of proving a valid inter vivos gift. In the recent case of Bodine v. Bodine, 149 Mont. 29, 422 P.2d 650, this court held that a donee of an inter vivos gift must bear the burden of proof that the gift was made. This is particularly true here where the donor was an incompetent person and the alleged donee was her fiduciary.

██ The matter of the Hamilton Fund certificate was not before the court during the removal proceeding at the time A. D. Bryan testified and the appellants specify error in the use of answers to interrogatories propounded to A. D. Bryan after Bryan had left Montana. Comments by the judge below at a hearing on June 22, 1966, indicate that the parties and attorneys concerned in this estate agreed to use depositions or interrogatories because A. D. Bryan refused to return to the state. This being the case, the interrogatories were properly considered; the hearing was a proper judicial proceeding. In the absence of a jury, the district judge was competent to assess the evidentiary merits of the answers. These answers substantiate the findings of the court below with regard to the certificate and were properly taken into consideration.

█ Appellants urge as error the examination of A. D. Bryan during the removal proceeding under the adverse witness statute, found in Rule 43, M.R.Civ.P. Rule 81, M.R.Civ.P., excludes certain statutory proceedings from the Rules of Civil Procedure to the extent that the statutory proceedings are contrary to the Rules. The removal action was brought under section 91-5201, R.C.M.1947, which provides that the procedure and hearing is to be conducted in the same manner provided in sections 91-2101 through 91-2105, R.C.M.1947. Having exam-

530

ined these sections, we find no conflict with regard to the use of adverse witnesses, and must therefore conclude that there was no statutory prohibition to prevent the examination of appellant Bryan as an adverse witness.

█ Final specifications of error urged by Bryan concern the scope of inquiry of the removal action. Specifically, it is urged that only events taking place after Bryan was appointed guardian could be looked into. Finding no authority or logical necessity in support of this argument, it must be rejected.

It is clear to this court that A. D. Bryan committed a flagrant breach of his fiduciary duties. He should find some comfort in remaining only civilly liable for his misconduct.

█ While appellant Western Surety Company shares common questions of law and fact with A. D. Bryan, there are several independent issues as to the surety's liability in this case. A. D. Bryan made substantial withdrawals of funds under his power of attorney for about two months before being appointed guardian of Louise Wyman. The surety claims that it should not be liable for such "prebond devastavits." Citing 25 Am.Jur., Guardian and Ward, § 194, p. 120, Western Surety argues that it would be liable for prebond misappropriations only if the bond agreement so provided or if the guardian was solvent at the time he was appointed as guardian. The district court judge found that A. D. Bryan was insolvent when he obtained the bond and the guardianship. Certainly he could not have gained solvency through the misappropriation of monies and stock certificates of another. This court is in basic agreement with the general proposition that the surety should not be liable for prebond devastavits or defalcations. However, the judge below found that while certain funds were withdrawn under the power of attorney they were not misappropriated for the personal gain of A. D. Bryan until after he had been appointed guardian. Since Bryan had a legal right to possession and control of such funds under the power of attorney, the mere withdrawal of such amounts in itself does not con-

stitute a devastavit or fraud on the guardianship estate. The trial judge said in part, "while the monies were taken from the incompetent's account prior to December 23, 1964, the expenditures were made in cash after the date of his appointment and it is therefore impossible to separate these two periods for the purposes of accounting * * *." Western Surety Company did not intervene in this action until after the removal proceedings. There is no evidence showing that A. D. Bryan actually misappropriated funds during the period of the power of attorney. We therefore hold that the surety is liable for the amount of $2,674.17 in cash expenditures; the term "prebond devastavits" is misleading and does not accurately reflect the findings of the district judge.

The Surety's liability on the Hamilton Fund certificate has already been established from a consideration of A. D. Bryan's appeal.

The final question before us in what we have called an "oblique manner," concerns attorney fees set by the district judge in favor of counsel for A. D. Bryan and William S. Bryan. Because the judgment is silent as to the source of these fees, the issue is not properly before this court. However, in the interest of promoting a final resolution of this case it should be made clear that appellant Western Surety Company has no liability whatsoever for these attorney fees. A demand was made on the Surety for such amounts, and improperly so. The failure of the district judge to specify possible sources from which attorney fees could be paid cannot be considered reversible error.

For the foregoing reasons, the judgment is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES ADAIR and JOHN CONWAY HARRISON concur.